**O. J. TOLAND, Appellant, Cross Appellee,**

v.

**TECHNICOLOR, INC., a corporation, Appellee, Cross Appellant.**

**Nos. 71–1652, 71–1653.**

United States Court of Appeals, Tenth Circuit.

Oct. 25, 1972.

James M. Little, Oklahoma City, Okl. (Leslie L. Conner, Oklahoma City, Okl., with him on the brief), for appellant.

A. P. Murrah, Jr. of Andrews, Mosburg, Davis, Elam, Legg & Kornfeld, Oklahoma City, Okl., for appellee.

Before LEWIS, Chief Judge, KILKENNY * and DOYLE, Circuit Judges.

LEWIS, Chief Judge.

These cases involve a primary appeal by plaintiff Toland and a cross appeal by Technicolor from a judgment entered in the Western District of Oklahoma in an action in which Toland sought to recover from Technicolor on a claim for

* John F. Kilkenny, Senior Circuit Judge, U. S. Court of Appeals for the Ninth Circuit, sitting by designation.

damages for breach of an alleged contract for sale of certain consumer items. Jurisdiction is based on diversity of citizenship of the parties. After empaneling a jury and hearing the plaintiff's testimony, the trial court granted Technicolor's motion for directed verdict. The court concluded from the plaintiff's own testimony that there was no contract ever entered into and, in the alternative, that even if there had been a contract, its enforcement was barred by the Statute of Frauds. Technicolor cross appeals contending the court erred in failing to assess reasonable attorney fees as recoverable costs under 12 Okl. Stat. § 936.

In June, 1970 the plaintiff Toland, a resident of Oklahoma City, was employed by Technicolor in marketing certain "home movie" kits containing projectors, screens, film, and cameras. At about this time, Technicolor decided to cease marketing this product. In connection with this decision the plaintiff was contacted by a Mr. Mitchell of Technicolor concerning some kits in plaintiff's possession that were to be returned to Technicolor. In the course of a telephone conversation, Technicolor indicated it was attempting to dispose of its inventory in the home movie kits. The plaintiff expressed an interest in talking to Technicolor about the possibility of his purchasing the inventory and marketing the products. He was told that Technicolor was already negotiating with another party but would be willing to talk with him.

Further telephone conversations between plaintiff in Oklahoma City and Mr. Mitchell of Technicolor in Los Angeles revealed that Technicolor had about 3,000 home movie kits on hand and about 9,000 cameras. In the conversations it was agreed that if the sale were made to plaintiff the price would be about $732,000 depending on the exact number of kits and cameras. Technicolor indicated it was concerned about plaintiff's credit, as no one in Technicolor's home office had ever met with or had dealings with him. Plaintiff then offered to put up as collateral $250,000 worth of securities listed on the "big boards", the American and New York Stock Exchanges. Plaintiff was also anxious to come to California to finalize the deal. Thus, in a telephone conversation on July 17 between plaintiff and Mitchell, they agreed to meet at 10:00 a. m. on July 20 at Technicolor's offices in Los Angeles. On July 20 plaintiff called Technicolor and informed them that he would be unable to make the ten o'clock appointment. He said that he had been unable to get the securities before 10:00 a. m and would like to meet with Technicolor later. Mr. Mitchell called Toland later in the afternoon of July 20 and informed him that Technicolor had finalized an agreement with another party and therefore there was nothing more to discuss with plaintiff. Disturbed by this development, Toland brought this lawsuit.

Plaintiff testified at the trial that a contract had been made during his final telephone conversation with Mitchell on July 17. He testified that he was to take the $250,000 in securities to the meeting in Los Angeles at 10:00 a. m. on July 20 and that there the contract would be reduced to writing. The evidence showed that Toland and Mr. Mitchell had never met prior to the trial. Plaintiff admitted that some of the details of the alleged contract had not been worked out. He also admitted that the contract, if it ever existed, was strictly an oral agreement; nothing was ever put into writing.

◼◼ Plaintiff contends in his appeal that it was error for the trial court to grant the defendant's motion for directed verdict. In considering a motion for a directed verdict, the trial court must view the evidence in a light most favorable to the party opposing the motion. Wright v. Marzo, 10 Cir., 427 F. 2d 907. If the evidence, taken in that light, is such that the trial court would be required to set aside a verdict for the opposing party, a motion for directed verdict should be granted. C. H. Codding & Sons v. Armour & Co., 10 Cir.,

404 F.2d 1. This was a proper case for directed verdict and the defendant was entitled to it as a matter of law. Even accepting plaintiff's testimony as entirely true, defendant was entitled to judgment in its favor. The parties never progressed past the point of negotiation. So, too, an oral contract such as plaintiff claimed would be barred by the California Statute of Frauds. Cal.Comm. Code § 2201.[1] The parties agreed that California law applied. There were no facts proved that would bring this case within one of the exceptions to the cited statute. The trial court properly directed a verdict against Toland and this portion of the judgment is affirmed.

In diversity litigation this court applies state law with respect to the allowance of attorney fees. Hardware Dealers Mutual Fire Insurance Co. v. Smart, 10 Cir., 293 F.2d 558, 560–561; see Kilpatrick Brothers, Inc. v. International Business Machines Corp., 10 Cir., 464 F.2d 1080 (filed July 19, 1972). Consequently, Technicolor's cross appeal requires an interpretation of the applicable Oklahoma statute [2] and we are unaided by Oklahoma judicial decision. The trial court indicated that it was the fact of an existing contract and not the claim to an existing contract which triggered recovery of attorney fees as costs under the statute. We consider this reasoning to be faulty. In this case the trial court could well have directed a verdict solely on the grounds of the bar of the Statute of Frauds regardless of whether plaintiff had or had not established the existence of an oral contract. The merits of plaintiff's ultimate claim would be fully determined and the litigation would be fully terminated by such a ruling. To interpret the subject statute so as to perpetuate a side issue as to the recovery of attorney fees would seem to defeat the purpose of the statute. Such purpose has been described by one court as "to prevent the threat of litigation as a tactic either to avoid paying just debts or to enforce false claims." Cutter Flying Service, Inc. v. Straughan Chevrolet, Inc., 80 N.M. 646, 459 P.2d 350, 353. We conclude the statute should be construed as a deterrent to hasty litigation and not as a block to expedient adjudication of the overall merit of an action. Defendant's other contentions relating to error in the assessment of costs are without merit.

The case is remanded to the trial court with instructions to determine reasonably attorney fees to be assessed in defendant's costs. The judgment in all other respects is affirmed.

1. The alleged contract clearly comes under the provisions of § 2201(1) which is identical to U.C.C. § 2–201(1):

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

2. 12 Okl.Stat. § 936 provides:
*Attorney fees taxed as cost in actions on certain accounts, bills and contracts.*
In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to [*sic*] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.